**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

     *-and-*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Eastern District of New York          1:19-cv-06064

| | |
|---|---|
| Melissa Rogers, individually and on behalf of all others similarly situated, | |
|        Plaintiff | Complaint |
|    - against - | |
| Casper's Ice Cream Inc., | |
|        Defendant | |

     Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

     1.    Casper's Ice Cream Inc. ("defendant") manufactures, distributes, markets, labels and sells ice cream products purporting to contain flavor from their natural characterizing flavor, vanilla under their Fat Boy Ice Cream brand ("Products").

     2.    The Products are labeled as containing vanilla ice cream between chocolate wafers (5.0 Fl. OZ/147 mL) and are sold in packages of six and are available to consumers nationwide

from brick and mortar stores, online stores and/or defendant's website.



I.      Ice Cream Products

3.      Ice cream is a year-round treat enjoyed by 96% of Americans.[1]

4.      Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[2]

5.      Ice cream is defined by a minimum of 10 percent milkfat, weighing no less than 4.5 pounds to the gallon and containing less than 1.4 % egg yolk solids.[3]

6.      When ice cream has 1.4% or more egg yolk solids as part of its base, it is referred to as "french ice cream."[4]

7.      According to ice cream lore, Thomas Jefferson supposedly "invented" vanilla ice cream when he learned of vanilla during his ambassadorship to France and upon returning to

---

[1] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018
[2] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com, October 12, 2017.
[3] 21 C.F.R. § 135.110(a)(2) ("Ice cream and frozen custard.").
[4] 21 C.F.R. § 135.110(f)(1).

Monticello, mixed this bottle with the frozen milk and cream dessert he was fond of consuming while drafting the Declaration of Independence.[5]

8.    President Jefferson is even said to have imported vanilla so this new frozen dairy treat could be served at his inaugural ball.

## II.    Vanilla is Perennial Favorite Ice Cream Flavor

9.    Vanilla is the consistent number one flavor for 28% of consumers, confirmed two groups who would know – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

10.    The reasons for vanilla's staying power are "not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats."[6]

11.    By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[7]

12.    The applications of vanilla ice cream include its centerpiece between chocolate wafers ("sandwich"), enrobed in chocolate on a stick ("bar"), topping a warm slice of fresh-baked pie ("à la Mode"), drizzled with hot fudge and sprinkled with crushed nuts and topped by a maraschino cherry ("sundae") or dunked in a cold frothy glass of root beer ("float").[8]

## III.    Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

13.    The tropical orchid commonly known as "vanilla" does not  develop its prized flavor

---

[5] Thomas Jefferson's Handwritten Vanilla Ice Cream Recipe, Open Culture, July 13, 2014; Thomas Jefferson's Vanilla Ice Cream, Taste of Home, June-July 2012; Thomas Jefferson's Original Vanilla Ice Cream Recipe, Jefferson Papers, Library of Congress; Anna Berkes, "Ice Cream" in Thomas Jefferson Encyclopedia, Thomas Jefferson Foundation, Inc., Monticello.org, June 28, 2013
[6] Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018
[7] Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018
[8] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.

on its own.

14.     By law, vanilla refers to the "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[9]

15.     Shortly after the passage of the Pure Food and Drugs Act of 1906, E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[10]

16.     This demand could not be met by the natural sources of vanilla, leading manufacturers to devise methods to imitate vanilla's flavor and appearance.

17.     Though the Pure Food and Drugs Act was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[11]

18.     Daily headlines tell a story of a "resurgent" global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[12]

19.     While "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

---

[9] 21 C.F.R. §169.3(c)

[10] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

[11] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

[12] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

20.     Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[13]

21.     The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[14]

| Type of Food Fraud | Application to Vanilla |
|---|---|
| ➢ Cheating on analytical tests by containing markers specifically tested for | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Cheating by giving consumers the impression the food or ingredient is present in greater amounts and/or higher quality form than it actually contains | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks they are a result of the product containing real vanilla bean, when the ground beans have been exhausted of flavor, and any vanilla flavor tasted may not even be due to the presence of real vanilla |
| ➢ Substitution or Replacement a food product/ingredient with an alternate food product/ingredient of lower quality | • Tonka beans, which are banned from entry to the United States, instead of vanilla beans<br>• Coumarin, phytochemical found in Tonka beans, to increase the vanilla flavor perception |
| ➢ Coloring agents to produce a more attractive color | • Caramel in vanilla extracts to darken the substance's color additives like caramel to enhance the hue of an imitation vanilla so it more closely resembles real |

---

[13] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.
[14] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

vanilla[15]

- Annatto and turmeric in dairy products purporting to be flavored with vanilla, to darken the color to better resemble the hue of rich, yellow butter

➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component

- Synthetically produced ethyl vanillin, derived from wood pulp, tree bark or coal tar

➢ Ingredient list deception[16]

- Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list – "ground vanilla beans" as containing actual vanilla flavor when they are devoid of any naturally occurring vanilla flavor
- "Vanilla With Other Natural Flavor"
    - sold by more knowledgeable flavor suppliers to less knowledgeable yet sophisticated manufacturers who don't (and can't) ask questions
    - flavor companies say "'trust us, you can call this 'natural flavor' and label the product as 'vanilla'"
        - cite "proprietary" formulations and "trade secrets"
    - flavor suppliers fail to disclose:
        - they have "boosted" the miniscule amount of vanilla in Vanilla WONF with a hearty dose of vanillin
        - vanilla combined with vanillin even if it

---

[15] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.
[16] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar

contains "other natural flavors" still required to disclose "artificial flavor" to prevent consumer deception as to vanilla content

- Manufacturers turn blind eye to flavor suppliers' calculated silence because consumers pay more for products without the term "flavored" and with the terms "vanilla" and "natural"

➢ Diluting/Extending

- Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[17]

- "Spiking" or "fortification" of vanilla through addition of natural flavors including vanillin, which simulates vanilla taste but obtained from tree bark

➢ Compounding – "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste."[18]

- "Flavor Compounding Is a Skilled Art and Science Designed to Produce a Flavor Perception That Seems to be Authentic or at Least Derived from a Natural Source"[19]

- Have things changed?

  o **1911:** The "public should clearly understand" that flavor combinations such as "vanilla and vanillin…vanilla flavor compound," etc., are not "vanilla [extract] no matter what claims, explanations or formulas are given on the label."[20]

  o **2018:** According to the head of "taste solutions"

[17] Berenstein, 423.
[18] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.
[19] Charles Zapsalis et al., Food chemistry and nutritional biochemistry. Wiley, 1985, p. 611.
[20] Kansas State Board of Health, Bulletin, Vol. 7, 1911, p. 168.

at global conglomerate Kerry, "The challenge is to find a vanilla flavor that matches the taste of pure vanilla natural extracts."[21]

- The solution?
- "[G]et creative" and "build a compounded vanilla flavor with other natural flavors"
- "This solution can provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."

IV.   What Consumers Expect from Ice Cream Labeling

22.   To prevent deception of consumers, the flavor designation for ice cream is divided into three categories.

23.   The ice cream categories are based on the

(i)   use of natural and various combinations of natural and artificial flavors that characterize this food;

(ii)   source(s) of the characterizing flavor;

(iii)    flavor which predominates;

(iv)   amount of each flavor component in the product; and

(v)   percent of the total flavor component represented by a flavor component.[22]

A.   Natural and Artificial Flavor in Ice Cream Products[23]

24.   The ice cream flavor regulations are specific to the nature of this food and precede,

---

[21] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.
[22] 21 C.F.R. § 135.110(f)(2)(i)-(iii); 21 C.F.R. § 135.110(f)(3)-(5).
[23] Numerous advisory opinions and official guidance documents which have been unamended, unrevoked and unmodified.

by decades, the general flavoring regulations for non-ice cream foods.

25.    One of the earliest debates with respect to ice cream flavor labeling was over the use of vanillin, the main flavoring compound in vanilla.

26.    Industry advocated for labeling requirements which did not distinguish between vanilla and vanillin synthesized from clove oil, a natural source material.

27.    During a hearing where the requirements for ice cream flavoring were discussed in the 1930s, Congressmen E.A. Kenny of New Jersey and Virgil Chapman of Kentucky inquired of the ice cream lobby's representative, Mr. Schmidt:

> Mr. Kenney: Do you not think, though, Mr. Schmidt, that if you label it vanilla ice cream, it ought to be vanilla; and if it is made with vanillin extracted from oil of cloves, you ought to label it manufactured with such vanillin?
>
> Mr. Schmidt: Well, we, of course, do not think so. That is why we are here making our protest. We think, after all, the consuming public is accustomed to accepting as vanilla artificial vanillas.
>
> Mr. Kenney: We agree that Barnum educated us along that line a long time ago.
>
> …
>
> Mr. Chapman: I do think that if it is chocolate it ought to be labeled "chocolate"; and if it is flavored with vanillin made from oil of cloves, it ought to be labeled to show that it is flavored with vanillin made from oil of cloves; and if it is flavored with vanilla, it ought to be labeled "vanilla"; and if it is " flavored with lemon, it ought to be labeled lemon "; and if it is cherry, it ought to be labeled "cherry."

28.    Later in the hearing, Mr. Chapman and another industry representative engaged over the proper declaration of flavor for ice cream:

> Mr. Chapman. Do you make raspberry?
>
> Mr. Hibben. Yes.
>
> Mr. Chapman. And you put that on the label?

Mr. Hibben. We say " raspberry ice cream."

Mr. Chapman. And If it is peach, you put that on the label?

Mr. Hibben. It Is peach ice cream; yes.

Mr. Chapman. And If you call it vanilla, what do you put on?

Mr. Hibben. We put "vanilla ice cream" on our labels. That Is what we want to continue to do. We want to put vanilla on those labels.

Mr. Chapman. But you say you put in It oil of cloves instead of vanilla.

Mr. Hibben. We do not use cloves. We use vanillin derived from the oil of cloves.

Mr. Chapman. If you put out strawberry ice-cream, you would not want to use raspberry to make it, would you?

Mr. Hibben: No; but we use vanillin, which is an ingredient of the vanilla bean and, its true to name.

Mr. Chapman. Is it an extract from the vanilla bean?

Mr. Hidden. It is both. It is taken both from the eugenol and the vanilla bean and is the same product. If you were a chemist you could not tell the difference, and if you were a doctor, you would say that one is just as harmless as the other.

Mr. Chapman: I do not object to buying artificial vanilla ice cream if it is pure, but if it is artificial. I would like to know what I am getting.

29.   The above exchange reveals that the flavor question in ice cream was *not* about whether a flavor is derived from a natural source.

30.   The dialogue shows that where ice cream was labeled as "vanilla" or "strawberry," they should not have flavors obtained from sources other than the characterizing flavor – whether that is vanillin from clove oil or added raspberry flavor in strawberry ice cream.

31.   The "natural flavor" refers *only* to a natural *characterizing* flavor

32.   For example, in vanilla or strawberry ice cream, the natural flavor would be "vanilla" or "strawberry" because these ingredients characterize the ice cream product.

33.   Outside of the ice cream context, "natural flavor" refers to "the essential oil,

oleoresin, essence or extractive…which contains the flavoring constituents" from a natural source such as plant material and can refer to combinations of natural flavors.[24]

34.   "Artificial flavor" in ice cream includes (1) a flavor not derived from the characterizing flavor, even if obtained from natural sources and made through natural processes and (2) a flavor not derived from the characterizing flavor that is used to simulate the characterizing flavor. [25]

35.   This application of "natural flavor" and "artificial flavor" is unique to ice cream products, as opposed to non-ice cream products covered under the general flavor labeling regulations at 21 C.F.R. § 101.22.[26]

36.   Even the manner in which the ice cream flavor is designated is different compared to what is required under the general flavoring regulations.

37.   One of the reasons for these different requirements is because ice cream is a high quality and expensive product made mainly from milk and cream.

38.   The government established these regulations to protect consumers against imitation vanilla flavoring due to the industry's relentless drive for profit.

39.   When consumers purchase such a product, they will expect the ingredient which characterizes the ice cream – strawberry, vanilla, chocolate – will be the source of the food's flavor.

40.   Where ice cream has flavor *added* from sources other than the characterizing ingredient, consumers deserve to be informed of this information to avoid being misled.

41.   Consumers rely on the front labels of products to present information in a straightforward, non-deceptive way.

---

[24] 21 C.F.R. § 101.22(a)(3).
[25] Compare 21 C.F.R. § 101.22 (natural flavor) with 21 C.F.R. § 169.175 (Vanilla extract.) and § 169.177 (Vanilla flavoring.).
[26] *See* 21 C.F.R. §135.110(f)(2)(i) (no provision for natural flavors other than the "[natural] characterizing flavor").

42.     Where an ice cream is represented on the front label with an unqualified name of the natural characterizing flavor, *viz*, "vanilla," followed by the term "ice cream," yet contains flavor not derived from that characterizing flavor, such a front label designation of "vanilla" would be inconsistent with law and misleading to consumers.

B.  Category 1 Ice Cream Products

43.     For decades, consumers have expected products labeled as vanilla ice cream to be exclusively flavored by real vanilla derived from the vanilla plant and contain a sufficient amount of vanilla to characterize the food.

44.     This requirement is contained at 21 C.F.R. §135.110(f)(2)(i), which states that where an ice cream "contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla,' in letters not less than one-half the height of the letters used in the words 'ice cream'" and expressed in the following form:

> ["characterizing flavor"] + ["ice cream"] → "Vanilla Ice Cream" or "Strawberry Ice Cream." ("Category 1").

45.     The congressional hearings, numerous unamended and unrevoked FDA Guidance Materials and standard industry practice for over fifty years by adhering to the requirements reveal that the "artificial flavor" referred to in the Category 1 regulation refers to flavor obtained from *any* source other than the characterizing flavor – the vanillin from clove oil or the raspberry flavor in strawberry ice cream.

46.     Because ice cream is a standardized food and the vanilla ingredients are subject to their own standards, the designation of the vanilla flavoring is controlled by 21 U.S.C. §343(g):

> A food shall be deemed to be misbranded –

> (g) Representation as to definition and standard of identity

> If it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title, unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food.

47.    This means that where an ice cream characterized by a vanilla and does not contain artificial flavor, its ingredient list is required to bear "the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food."[27]

48.    Going further, it is a requirement that all ingredients be listed by their common or usual name.[28]

49.    For vanilla ice cream, the common names of these flavorings include Vanilla Extract, Concentrated Vanilla Extract, Vanilla Flavoring and Concentrated Vanilla Flavoring, specified in the regulations for vanilla ingredients.  *See* 21 C.F.R. §§ 169.175 to 169.178.

C.   Category 2 Ice Cream

50.    If an ice cream contains a natural characterizing flavor (i.e., vanilla) and an artificial flavor simulating it, and if the natural flavor predominates, a non-misleading label would be expressed in the following form:

> ["characterizing flavor"] + ["flavored"] + ["ice cream"] → "Vanilla Flavored Ice Cream" or "Peach Flavored Ice Cream." ("Category 2").

*See* 21 C.F.R. §135.110(f)(2)(ii).

D.   Category 3 Ice Cream

51.    If an ice cream contains a natural characterizing flavor and an artificial flavor simulating it, and if the artificial flavor predominates, or if only artificial flavor is used, a non-misleading label would be expressed in the following form:

---

[27] 21 U.S.C. § 343(g)(2) read with 21 C.F.R. § 135.110(f)(2)(i) and 21 C.F.R. §§ 169.175 – 169.178.
[28] 21 C.F.R. § 101.4(a)(1).

["artificial" or "artificially flavored"] + ["characterizing flavor"] + ["ice cream"] → "Artificially Flavored Vanilla Ice Cream" or "Artificially Flavored Strawberry Ice Cream." ("Category 3").

*See* 21 C.F.R. §135.110(f)(2)(iii).

## V. The Products are Misleading Because they Lack Sufficient Vanilla

52.    The Products are misleading because they do not contain the amount, type and percentage of vanilla as a component of the flavoring in the product which is required and consistent with consumer expectations.

53.    The front label statements of "Premium Ice Cream," "The Perfect Treat" and "Premium Vanilla" are understood by consumers to identify a product where vanilla is (1) the characterizing flavor, (2) contained in a sufficient amount to flavor the product and (3) the exclusive source of flavor.



A.  <u>Ingredient Lists Reveal Products Contain Flavoring Not from Vanilla</u>

14

54.     The Products' vanilla ice cream is not flavored only by vanilla, but contains flavors derived from non-vanilla sources, which is misleading to consumers.

55.     The representations of "vanilla" describing the ice cream products are unqualified, and the labels and packaging do not disclose the addition of non-vanilla flavors as part of the Products.

56.     This is revealed through the ingredient list indicating the Product contains "Natural Flavor."

 **INGREDIENTS:** Fresh Whole Milk, Liquid Sugar (Sugar, Corn Syrup), Wafer (Wheat Flour, Sugar, Dextrose, Palm Oil, Caramel Color, Contains 2% or less of the following: Corn Flour, Corn Syrup, Modified Corn Starch, Cocoa, Salt, Soy Lecithin, Baking Soda, and Mono & Diglycerides), Cream, Non-fat Dry Milk, Stabilizer (Microcrystalline Cellulose, Cellulose Gum, Mono & Diglycerides, Polysorbate 80, Carrageenan), Natural Flavor.

## VI.     "Natural Flavor" Refers to an Ingredient That May Contain Vanilla, *But Also Contains* Non-Vanilla Flavor Compounds

57.     Where a product purports to have a characterizing flavor of vanilla but the ingredient list identifies "natural flavor" as the exclusive flavoring ingredient or as one among such flavoring ingredients, it means (1) the flavoring in the food or beverage is not exclusively vanilla and (2) the product contains non-vanilla flavors obtained from natural sources other than vanilla beans and

15

made through natural processes.[29]

A.   "Natural Flavor" is not a Synonym for Expected Vanilla Ingredients

58.   Defendant's listing of "natural flavor" is not another way to refer to the exclusively vanilla flavoring ingredients that consumers expect, and the law requires.

59.   These exclusively vanilla ingredients – vanilla flavoring, vanilla extract, etc. – differ only in that the former is at least thirty-five (35) percent ethyl alcohol while the latter is less than this amount.[30]

B.   Natural Flavor does not refer to the Standardized Vanilla-Vanillin Ingredients

60.   The vanilla standards reference three vanilla-vanillin combinations – Vanilla-vanillin extract, Vanilla-vanillin flavoring and Vanilla-vanillin powder.[31]

61.   The standardized vanilla ingredients – vanilla extract, vanilla flavoring, concentrated vanilla flavoring, and vanilla powder – *could* be understood as complying with the requirements for "natural flavor" even though they are required to be designated by their common or usual names on the ingredient list.[32]

62.   However, the "vanillin" referred to in the standardized combination ingredients is produced from non-vanilla bean materials, like wood pulp, coal tar, eugenol, lignin or plant fiber.

63.   While vanillin is a main flavoring component of vanilla, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant.

---

[29] These natural processes may include fermentation but when high heat and high pressure is used, the FDA considers this to be a synthetic method of obtaining a flavor.  This "natural" process of high heat and high pressure is used to obtain vanillin from the non-vanilla material of eugenol, the main component of clove oil. Vanillin derived from eugenol through a high heat and high pressure process is not considered "natural vanillin" which makes its addition to the "WONF" part of "Vanilla WONF" misleading.

[30] 21 C.F.R. §§ 169.175 (Vanilla extract.), 169.177 (Vanilla flavoring.); also concentrated versions of each of these.

[31] 21 C.F.R. § 169.180, § 169.181, § 169.182.

[32] 21 C.F.R. § 169.175 (Vanilla extract.), § 169.176 (Concentrated vanilla extract.), § 169.177 (Vanilla flavoring.), § 169.178 (Concentrated vanilla flavoring.) and § 169.179 (Vanilla powder.).

64.     This type of "natural vanillin" is rarely produced, which means that almost all vanillin is synthetically produced and has no connection to the vanilla bean.

65.     The labeling and disclosure for a vanilla-vanillin combination ingredient would be controlled not by the general flavoring regulations but by the vanilla standards.

66.      These ingredients require that on the ingredient list, vanilla be "followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring),'" even if the vanillin is made from natural materials and through a natural process [33]

67.     If a product made with a vanilla-vanillin combination ingredient represented that its characterizing flavor was vanilla, its front label would be required to declare the presence of vanillin and/or artificial flavor(s).

68.     These requirements prevent consumers from being misled by products which "boost," "fortify" or "spike" a miniscule amount of real vanilla with the addition of vanillin, from non-vanilla sources such as tree bark, eugenol and lignin.

69.     Without any conspicuous disclosure of how much flavor in a product is derived from real vanilla as opposed to vanillin, consumers would pay more money for products that may taste like vanilla even though the taste is not derived from vanilla beans.

70.     For the purposes of ice cream flavor labeling, vanillin (from non-vanilla sources) cannot be designated as a "natural flavor" because it implies it derives from vanilla beans, whose flavor it simulates.[34]

71.     This applies even when vanillin is produced through a natural process (fermentation), such that it is properly designated as "vanillin derived naturally through fermentation."

72.     This means if a vanilla flavor is derived from any source other than vanilla, it is

---

[33] See 21 C.F.R. § 169.180(b), § 169.181(b), § 169.182(b).
[34] 21 C.F.R. § 101.22(a)(3)

accurately designated as an artificial flavor.[35]

73.    Therefore, the standardized vanilla-vanillin combination ingredients are not the ingredients used in the Products but for some reason, designated as "natural flavor."

C.   <u>"Natural Flavor" May Refer to "Vanilla with Other Natural Flavors" ("Vanilla WONF")</u>

74.    A typical ingredient used when giving consumers less vanilla than they are expecting and entitled to is "Vanilla With Other Natural Flavors" or "Vanilla WONF."

75.    When adding complicated flavors to a product, a flavor supplier typically mixes various flavors together into one package, for reasons including convenience and processing.

76.    If the Products contained any of the exclusively vanilla ingredients, there would not be a need to declare or identify "Natural Flavor" in the ingredient list.

77.    Ingredients are allowed declared as "natural flavor" when there is (1) no standard prescribing the way to designate the specific flavor and (2) a mixture of flavoring ingredients such that it may be impractical or would compromise trade secrets by disclosing the composition and ratio of the flavor constituents.

78.    Additionally, it would be illogical to use a more expensive and higher quality ingredient (vanilla extract or vanilla flavoring) but designate it with a vague term perceived less favorably by consumers due to its opaque components, lower cost and ubiquity.

79.    Since vanilla is the world's second most valuable flavor ingredient, flavor suppliers and the companies they work with are continually exploring new ways to increase profits at the margins, at the expense and to the detriment of consumers and in violation of law.

80.    By formulating a flavor ingredient that includes an unspecified amount of vanilla – likely less than half – and compounding, extending and/or diluting it with "other natural flavors,"

---

[35] In contrast to the regulations at 21 C.F.R. § 101.22.

or flavors not derived from vanilla, they can plausibly call this ingredient "Vanilla With Other Natural Flavors."

81.     On the Product's ingredient lists, "Vanilla WONF" is likely designated through the term "Natural Flavor."[36]

82.     In an ice cream represented as flavored only from the characterizing flavor, it is:[37]

    1.  deceptive and unlawful to include flavoring that is not derived from the characterizing flavor, vanilla; and

    2.  misleading and unlawful to simulate, reinforce and "extend" the taste of vanilla through "Natural Flavor" because consumers will:

        i.   think they received more real vanilla than they actually did;

        ii.  expect all of the vanilla flavor or taste imparted by the Products to be from vanilla; and

        iii. pay more for such product.

VII.    Vanilla Ice Cream Products are Misleading Because They are Labeled and Named Similar to Other Products

83.     Competitor brands to defendant's Vanilla Ice Cream Products are labeled as or containing vanilla ice cream, and are not misleading because they only contain vanilla.

A.  Vanilla Ice Cream Sandwich of Competitor and Defendant

84.     The following is an example of a Vanilla Ice Cream Sandwich of defendant and a competitor product.

Competitor Product                              Product

---

[36] The natural flavor as part of the vanilla ice cream component is distinct from any natural flavor that may be used in the inclusions such as the chocolate chips or cookie dough.
[37] 21 C.F.R. § 135.110(f)(2)(i).

 

85.  The ingredients in the Competitor Product and Product are presented below.

<u>Ingredients</u>

<u>Competitor Product</u>

INGREDIENTS: ICE CREAM: MILK,* CREAM,* CANE SUGAR,* EGG YOLKS,* VANILLA EXTRACT,* GUAR GUM,* LOCUST BEAN GUM.*

INGREDIENTS: ICE CREAM: MILK, CREAM, CANE SUGAR, EGG YOLKS, <mark>VANILLA EXTRACT</mark>, GUAR GUM, LOCUST BEAN GUM.

<u>Product</u>



**INGREDIENTS:** Fresh Whole Milk, Liquid Sugar (Sugar, Corn Syrup), Wafer (Wheat Flour, Sugar, Dextrose, Palm Oil, Caramel Color, Contains 2%

or less of the following: Corn Flour, Corn Syrup, Modified Corn Starch, Cocoa, Salt, Soy Lecithin, Baking Soda, and Mono & Diglycerides), Cream, Non-fat Dry Milk, Stabilizer (Microcrystalline Cellulose, Cellulose Gum, Mono & Diglycerides, Polysorbate 80, Carrageenan), <mark>Natural Flavor</mark>.

86.     The competitor product lists "Pure Vanilla Extract" on its ingredient list and does not indicate the presence of other flavors not derived from vanilla, such as "Natural Flavor," as listed in defendant's Products.

B.  Misleading to Have Identical or Similar Product Names Where Significant Differences in Product Quality or Composition

87.     Product names for ice cream are established through application of the relevant regulations.

88.     Products are required to be identified and labeled in a way consistent with other products of similar composition.

89.     This framework assures consumers will not be misled by the quality and components of similarly labeled products where one product contains a greater amount, type and/or proportion of a characterizing and valuable ingredient.[38]

90.     Where two products are identified by the same descriptive terms and noun such as "Vanilla Ice Cream" and where the front label has no other modifications of these terms, consumers will be deceived into purchasing the lower quality product under the false impression that it contains the equivalent amount of said ingredients or components.

91.     Defendant's Product is misleading because it is represented as identical to another product which contains higher quality ingredients, which causes consumers to be misled and

---

[38] *See* 21 C.F.R. § 135.110(f) and 21 C.F.R. § 102.5(a) ("General principles.") ("General principles.") ("The name shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name. Each class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods.").

purchase the former expecting the two products to be identical in quality and fill.

VIII.    Conclusion

92.    The proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because it is more expensive and desired by consumers.

93.    Had plaintiff and class members known the truth about the Products, they would not have bought the Product or would have paid less for it.

94.    The Products contain other representations which are misleading and deceptive.

95.    As a result of the false and misleading labeling, the Products are sold at premium prices, approximately no less than $4.89 per 6 units of 5 oz each, excluding tax – compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

96.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

97.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

98.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

99.    Plaintiff is a citizen of New York.

100.  Defendant Casper's Ice Cream Inc. is a Utah corporation with a principal place of business in Richmond, Cache County Utah.

101.  This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

102.  Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

103.  A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

104.  Plaintiff Melissa Rogers is a citizen of Richmond County, New York.

105.  Defendant is a Utah corporation with a principal place of business in Richmond, Cache County, Utah.

106.  During the class period, Plaintiff purchased one or more of the Products identified herein for personal use, consumption or application based on the above representations, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

107.  Plaintiff would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

Class Allegations

108.  The classes will consist of all consumers in all 50 states with sub-classes for the individual states and nationwide classes.

109. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if Plaintiff and class members are entitled to damages.

110.  Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

111.   Plaintiff is an adequate representative because her interests do not conflict with other members.

112.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

113.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

114.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

115.   Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350<br>and Consumer Protection Statutes of Other States and Territories</u>

116.   Plaintiff asserts causes of action under the consumer protection statutes of New York, General Business Law ("GBL") §§ 349 & 350.

117.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

118.   Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

119.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because (1) it gives the impression to consumers the Products are only flavored by the characterizing ingredient and contains more of the characterizing ingredient than they actually do, (2) the ingredient list fails to dispel ambiguity and reinforces the front-label impression as to a greater amount of the characterizing ingredients (3) it does not conspicuously disclose the presence of flavors from sources other than the characterizing flavor.

120.   Plaintiff and class members relied on the representations and omissions, paying more

24

than they would have, causing damages.

Negligent Misrepresentation

121.  Plaintiff incorporates by reference all preceding paragraphs.

122.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing the characterizing ingredient was present in greater amount and proportion than it was and affirmatively representing the Products was flavored only by this ingredient or component.

123.  Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

124.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

125.  The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

126.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

127.  Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

128.  Plaintiff incorporates by reference all preceding paragraphs.

129.  Defendant manufactures and sells products which contain the identified characterizing ingredients and/or flavors which are desired by consumers.

130.  The Products warranted to Plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

131.  Defendant's front labels informed and warranted to Plaintiff the Products contained only the characterizing ingredients to impart flavor, and that they were present in amounts sufficient to independently characterize the food and that the flavor imparted to the Products was a result of the food ingredients and not "natural flavors" or "other natural flavors."

132.  Defendant had a duty to disclose and/or provide a non-deceptive description of the Products flavoring on the front labels and knew or should have known same were false or misleading.

133.  This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

134.  Plaintiff provided or will provide notice to defendant and/or its agents, representatives, retailers and their employees.

135.  The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

136.  Plaintiff and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

137.  Plaintiff incorporates by references all preceding paragraphs.

138.  Defendant's purpose was to sell products which purported to contain valuable and desired characterizing ingredient(s) or flavor(s), and represent the Products were exclusively or predominantly flavored from that ingredient and contained sufficient independent amounts of

same.

139.   The Products were not flavored exclusively from the characterizing ingredient but from flavor compounds blended together and labeled as "natural vanilla flavor with other natural flavor."

140.   Defendant's fraudulent intent is evinced by its failure to accurately indicate the Products contained flavor from non-vanilla sources on the front label, because it knows consumers prefer foods that are flavored from food ingredients instead of added flavor ingredients and contain enough of the characterizing food ingredients to flavor the Products.

141.   Defendant's intent was to secure economic advantage in the marketplace against competitors by appealing to consumers who value products with sufficient amounts of the characterizing ingredients for the above-described reasons.

142.   Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

143.   Plaintiff incorporates by references all preceding paragraphs.

144.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE,** Plaintiff prays for judgment:

1.   Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.   Entering preliminary and permanent injunctive relief by directing defendant to correct the

challenged practices to comply with the law;

3. Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   October 29, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

-and-

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

1:19-cv-06064
United States District Court
Eastern District of New York

Melissa Rogers, individually and on behalf of all others similarly situated

Plaintiff

- against -

Casper's Ice Cream Inc.

Defendant

## Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: October 29, 2019

/s/ Spencer Sheehan
Spencer Sheehan